This next case is 4-14-1073, Manual Read Appellant v. Bro Menn Physicians Management Corporation, Appellee. And appearing for the appellant is Attorney Jonathan Heupel. And for the appellee is Attorney Richard Seitz. Yes. All right, Mr. Heupel, are you ready to proceed? Yes. You may. Good morning. And as you indicated, I'm Jonathan Heupel here on behalf of the plaintiff appellant, Manual Read, who's appealing entry of summary judgment on behalf of the defendant of Bro Menn Physicians Management Corporation, which was entered by the McLean County Surgery Board last December. I apologize a little bit if I have some difficulty tracking this morning, but I had surgery this summer from Rennier's disease, and I just have a little bit of difficulty this morning, but I should be all right. The plaintiff had brought a negligent action in the McLean County Circuit Court against Bro Menn for misreporting elevated breath alcohol levels, which he alleges caused his termination of employment with the city of Bloomington. And the circuit court, in the order that's being appealed, found that there was no genuine issue of material fact of alcohol being a cause of the employment termination, and that the employment termination as a matter of law was, based on the accident itself, independent of any issue of alcohol, and therefore entered summary judgment for the defendant Bro Menn, finding that alcohol was not a contributing cause of termination of his employment by the city of Bloomington, and therefore Bro Menn had no responsibility for the termination. And it's the plaintiff's position, the panel's position today, that the record contains sufficient evidence to demonstrate that there were disputed issues of fact as to whether alcohol did play a factor in the termination of Mr. Reed's employment with the city of Bloomington. And there are three specific points of evidence that I would point to. First would be the letter of termination that was issued by Emily Bell, who was the city's director of human resources. And in that letter, basically the first two paragraphs explain the termination. And the first paragraph of that letter notes that Mr. Reed had an accident. He was operating a backhoe for the city of Bloomington. He worked for the Department of Public Works and had backed into a park van, unoccupied van, that then had the impact caused the parking pile that holds the parking pen that holds the car in the park position to loosen, and then it rolled across the street and struck a utility pole. And he received a citation for that. The police officer was called to the scene. And then because, and the letter explains, because he had been in a vehicle accident, he was required by city policy to report for alcohol screening tests. And so then he was taken to the Roman Clinic, and there he had two breath alcohol tests. The first one reported a level that was elevated above the .02 level, I think it was over .05, which was over the .02 level that was the threshold for the city. And so then they did a second test, and it also came out over .05, and again over the .02 acceptable level for the city. And so in Emily Bell's letter, in the first paragraph, she relates that he had an accident and received a citation, and then that triggered alcohol testing, and therefore his employment is being terminated. And then in a paragraph after that, she noted that this was his, although it was his first vehicle accident, incident, it was his second violation of the city's drug and alcohol policy. He had a prior violation, I think, in 1997. And then she said that also would have constituted grounds for termination. I think from reading of that letter, from the first paragraph, indicates that having an accident while under the influence of alcohol was the cause of employment termination. And then the second paragraph indicates that also alcohol by itself would have been a basis for discharge. So I think from that letter, it doesn't indicate that the accident alone was a cause of the discharge, but that it was either alcohol, the accident and alcohol, or just alcohol by itself, but not just the accident. Let's just go ahead and assume for the sake of the argument here that the alcohol, the presence of alcohol at the levels that were read by the operator at Broman are accurate, or not accurate, that they were part of the arbitrator's decision, and go from there. Your client filed suit against Broman, claiming various errors having been made by the operator of the machine, and that that approximately resulted in what? Those errors approximately resulted in erroneous BAC readings? Yes. Okay. Yes. But the arbitrator made very specific findings at the arbitration relative to the alcohol test. Specifically, this is at page 832 of your appendix. In sum, the city has proved by preponderance of the evidence that the grievant had a positive alcohol concentration test on August 2, 2006 in violation of the city's drug and alcohol testing policy. Previous to that, the arbitrator indicates overall the union has failed to undermine the accuracy of the .059 and .053 test results. So when it gets to the approximate cause issue and the negligence action, it seems that you have a prior determination having been made by the arbitrator, why is the plaintiff not barred by collateral estoppel? I understand you have these allegations of negligence that you've indicated were not previously addressed in arbitration, but ultimately the arbitrator made a finding regarding the blood alcohol concentration and that appears to have been fully litigated in the arbitration proceeding. How do you get past collateral estoppel there? I think the distinction on that issue, Your Honor, and that's an important point,  the first was the union grievance proceeding where negligence was not an issue, it wasn't raised, it wasn't essential to the finding by the arbitrator, although the arbitrator did find that he had probably been terminated as an appropriate disciplinary action based on having been operating heavy equipment on a public street while under the influence of alcohol. And the union had raised there just some issues about the machines being defective or that there were better machines, but they did not raise the specific issues that it raised in the complaint here on the negligence theory of there being negligence by the employees of a government facility as far as the instruction, supervision, chain of custody and the performance of the testing by the employees. I think that's the distinction so that for collateral estoppel, unlike for res judicata where it would be the same cause of action that would bar any issue that could have been raised, here with collateral estoppel because this is a different cause of action, if the issue didn't have to be necessarily decided by the prior tribunal and wasn't essential to its finding, then the claimant isn't barred from raising a new issue that wasn't cited in that prior ruling. And here it's the issues of negligence in the complaint which weren't part of the prior and weren't essential to the prior decision by the arbitrator who simply found that he had been operating equipment under the influence of alcohol which was sufficient grounds for termination. Counsel, I'm having difficulty with that because of course in the arbitration proceeding there was extensive testimony regarding whether or not he was properly supervised about the machines allegedly malfunctioning, not doing things they were supposed to do, the breath spray issue. It was really all about the alcohol testing and whether or not it was appropriately done and I'm not really understanding your argument that it's something separate or different now. Well, I think from reading the arbitration decision, what the union had tried to raise were certain defects in the equipment that was used rather than negligence by the agents involved. But didn't we have the testimony regarding whether or not he should have been supervising about him allegedly trying to go out and make a phone call and being stopped and using the breath spray and whether or not he should have been able to do that? I mean, what's different here as far as the negligence of the employee? Well, yes, here there is negligence. I think those things you point out, the union did raise those issues, but the arbitrator didn't decide it based on those. The arbitrator, I think she found that the union had not demonstrated, was trying to demonstrate that the equipment, testing equipment, had not reported the proper, was defective in not reporting the proper levels of alcohol so that the use of breath spray, it should have detected that and those types of things which are different from the negligence of the employees in the actual performance of the testing. So in this case, the plaintiff isn't claiming that the machines were defective in any way or inappropriate machines to be used, that the operation of the machines was negligent by the employees, the conduct of the employees. And so those acts weren't examined and ruled upon or no findings? No findings, specific findings were made on those points by the arbitrator, so those points weren't essential or necessary to the arbitrator's decision of finding. But the arbitrator did make a finding on the approximate cause issue in the negligence case, which is the presence of alcohol in your client's blood. So each of the acts of negligence have implicit in them the allegation that because of that negligent act, it led to an erroneous BAC reading, but the arbitrator had already made a determination that the BAC reading was accurate, is that right? Yes. The arbitrator, she had found that on page 13 of her decision that the machine defects that the union had raised did not address the critical question, the accuracy of the machine's analysis of the breath alcohol concentration. So I think the arbitrator didn't have to reach that, deciding the issue of negligence that's raised in the current complaint because that had really not been developed and fully presented at arbitration. Counsel, at the arbitration decision, I'm on page 830, it talks about, the arbitrator says, however, while the union has noted a number of irregularities in the testing process, they failed to refute the scores of the breath alcohol analysis machines. So I believe that the arbitration did get into the process, and I guess for me, the process is similar to how things are done, the steps taken, whether or not the employees are doing what they're supposed to do as far as running the machines. Well, from my reading of the arbitrator's decision, it seems that the union was simply raising different points about how the machines didn't operate properly, but not specifically that it was because of actions by the Roman employees, but that the machines were not reliable machines to conduct this type of test, and at least that's our position, that they raised different issues about why the machines weren't reliable, but that were independent of the actual conduct by the Roman employees. Thank you. I understand where you're coming from. Okay. And does the court have any further questions on that point? I don't believe so. And the other point I would just mention on there being a dispute about alcohol being a causative factor, the director of public works indicated that he thought alcohol was, from his understanding, alcohol had played a factor in the termination. And then the other key evidence is that, and we pointed this in the reply brief, but Emily Bell was asked to provide records and discuss disciplinary actions for other employee alcohol accidents, and I think we referenced a total, I counted them up, 38 of those other individuals, and in none of those instances was there a termination of employment. There was either reprimand or a suspension of employment for a few days, and some of those involved much more serious accidents in moving traffic, or repeated violations of accident violations. And so those are basically the two issues, but with respect to the court's questions on the collateral estoppel issue, it's our position that that really was not fully raised and addressed at the arbitration level, at the union arbitration level. From my reading of the discussion analysis, and in the earlier sections of the arbitrator's decision she notes the positions of the parties, and then in the discussion analysis section, basically goes through the arguments about machines not being reliable. It doesn't address the points of duty and breach of duty that are set forth in the current complaint that was brought against Roman for the elevated levels. Is there any other questions? I don't think so. Thank you, Mr. Heigl. We'll have time in rebuttal. Thank you. Mr. Stites. If the court doesn't mind, I'm on some cold medications that dry me out, so I'll bring that up. It pleases the court. Counsel? Well, this particular action, in our view, boils down to essentially a situation where the plaintiff is saying the city of Bloomington should have made a better decision. It is not really a lawsuit as against Roman Physicians Management Corporation, other than in name only. Basically, what the plaintiff is saying is the accident should have been investigated better, that the actions of Mr. Reed should not have been deemed egregious as opposed to some lesser standard, that they should have looked to the issue of intoxication and not the .02 arbitrary level at which the contract sets the number, and that finally the city of Bloomington should have been less punitive, for lack of a better term, in determining the sanction that would be applied to Mr. Reed. All of those things are city of Bloomington. They are not Roman Physician Management Corporation issues. Roman Physician Management Corporation had a single issue, and that was to test the breath alcohol of Mr. Reed. The arbitrator noted the various issues that arose during the course of that testing, but the reality of it is the arbitrator said that at the end there was an accurate result, or what at least the arbitrator felt was an accurate result. I believe that, as Justice Holder-White has somewhat indicated, that in fact they did look at the issue of the actions of the personnel, because to some extent the actions of the personnel are drawn into this issue of whether or not the machine operated correctly. There was an expert who is the same declared expert as would have testified in this case had summary judgment not been allowed. The allegations remain the same. It is a retrial, if you will, of the same issues. In essence what I believe the plaintiff has is that he may have some good arguments about this, but he has picked the wrong forum to try to do it. He needed to have done it in the arbitration if he was going to do it, or perhaps done it more effectively in the arbitration. Mr. Steitz, I want to just ask you about collateral estoppel generally, and then whether or not these general concerns have any application or relevance to this case. Collateral estoppel can be a very powerful weapon, and it can be used or misused by a court. If you have a situation where in the former proceeding one of the parties doesn't bring all guns to bear on an issue, but reserves that for a later time, could have a problem being stuck with a ruling, a finding made by the former tribunal. Take for instance a house fire that leads to the death of one of the occupants, and the insurance policy requires binding arbitration for a property damage claim. Included in that would be the cause and origin of the fire, and the arbitrator makes a finding in regards to cause and origin, and a later wrongful death suit the family of the decedent litigates that issue. Does collateral estoppel preclude the relitigation of that cause and origin issue? I'll start then with, as far as my answer goes, race judicata as I understand it is a preclusion of a cause of action. In other words, it is the umbrella if you will. Part of each cause of action has components, and collateral estoppel would apply to individual components. So, to answer your question, let's assume for the moment that for whatever reason in the house fire, there was a contested issue associated with how did this fire start. Did it start because someone had been doing finishing that day and threw a bunch of towels in the corner and they spontaneously combusted, or was it the heater that was five feet away? If that issue is litigated in the arbitration, and a negative finding to the homeowner is found that no, the heater had nothing to do with it, yes, I believe that that would be collateral estoppel as to that issue. That's a tough result for the family of the decedent, when perhaps in that property damage claim there's really not much fleshed out, or maybe half-heartedly it is, but at a later point they do bring all guns to bear on the issue and really have much more ammunition on that issue. But because it had been decided in a form of proceeding, they're stuck with that finding in regards to cause and origin. Same then would apply here, as I understand it, when we're talking about the proximate cause element. You're saying the arbitrator made a finding that the BAC results were accurately reported, accurately reflected Mr. Reed's blood alcohol concentration. Therefore, notwithstanding there might be different allegations of negligence brought in this claim, the proximate cause issue has previously been adjudicated. To go back to our house fire example, I'm assuming that there's a total privity relationship between the one who would be arbitrating or seeking arbitration and also the plaintiff in the subsequent action. Correct. So there is equal motivation. Now admittedly there's different damages, I'm not suggesting that. One is for a death, one is arguably for maybe the reconstruction of the house, or something of that nature. But I do believe that based on the case law that we cite in our brief, that there is an obligation to make sure that it's thoroughly litigated and things which could have been brought should have been brought. It's an obligation of the party who is seeking to seek the finding, in this case the plaintiff, to bring all guns to bear so as to make sure that it's the case that there is not duplication of effort. So you would agree that on our side of the bench here, we have to ensure or be clear that that issue was thoroughly vetted in the former proceeding. Yes. Now having said that, may I also suggest that I believe that plaintiff has misidentified the issue that I've said there's collateral estoppel. I have never contended that it was the case that the arbitrator did or did not make any findings about negligence. I don't think if you looked in the arbitrator's decision and did a search, you would find the word negligent or negligence. What I have focused on is the issue of the blood alcohol, I keep saying blood and I did that throughout the case, breath alcohol content. I'm sorry, I've been saying that. Well, that's okay. I did it multiple times at the trial court. Breath alcohol content that was determined was valid. Now, as I think the court suggested by some of the questions that were asked of the plaintiff, can there be negligence but it would be in a vacuum or free-floating negligence or as we lawyers like to say, must it be the proximate cause of something? Sure. I mean, you could say, and I'm not suggesting that I am saying it, but you could say, okay, on that last blood alcohol test, was it the case that the date should have been reset? You may remember that there was a changeover of time. And sure, could an expert get up and say, oh, it was negligent. They did not exercise ordinary care in changing that date. Does that change the outcome of the test? Of course not. It has nothing to do with that. That would be an example of, if you will, free-floating negligence that has nothing to do with it. Here, what I'm looking at is the issue of you can't get to the proposition that my client's alleged negligence resulted in a bad outcome if there's someone who has already determined, in a collateral estoppel sense, that the outcome was correct. So that's the issue as to which I believe there exists collateral estoppel, not as to the issue whether there was or was not negligence on the part of Roman Physician Management Corporation employees. So that's the issue on which I lost at the trial court. Twice. Yeah, well, twice. But I thought it was one of the more interesting ones. So instead, I managed to obtain summary judgment on the issue of what was the reason for the dismissal. And you've already had introduced to you through the plaintiff an indication about the Emily Bell letter. And I would say that if I were sitting in your seats, if I read the first paragraph, I would say both issues are mentioned in that paragraph. In the next paragraph, however, where it says that the issue of the alcohol content are also in violation, and then would have also resulted in your termination, now I believe that it is relatively clear that Emily Bell felt that the issue of the accident alone, which she described as egregious, was adequate for termination. But what made it egregious, that he was drinking on the job, right? Well, actually, when I asked Emily Bell those questions. I know what she said, but when you consider that in light of the evidence of the 38 prior accidents, none involving alcohol and none involving a termination, isn't there at least a dispute, an argument that alcohol was a prominent factor in the decision to terminate? Well, I'd be lying to you if I said that there wasn't at least a dispute, because we're here. So, obviously there is a dispute. However, I guess what I would say is, Emily Bell was the decision maker associated with this case. And one of the reasons that her deposition was taken was because it was possible to make more than one reading of her letter. So her letter was not in and of itself dispositive. But as you have suggested, I believe, by your comments, when we took the deposition, I think it's very clear, what she was saying was that the termination was by itself adequate by reason of the fact that there was this accident. Now, you have asked me, well, what makes this egregious, and how about these other 38 folks? I guess my real answer to that is, it's not a Bro-Man Physician Management Corporation question. It's the City of Bloomington. So even if the City of Bloomington had their worst day on record in terms of human relations department actions, and they incorrectly denominated this as egregious, that's really not attributable to Bro-Man. But, I mean, they're saying if they found it was egregious because of the alcohol, and Bro-Man caused an improper or inaccurate result as far as the testing, if that hadn't happened, they wouldn't have fired him. I mean, that's their whole point. So I understand it's rather awkward when we wish we had Bloomington here so we could ask them something, but that's the connection. And I guess what I'd say is that the primary reason for the taking of the Bell deposition, at least from our standpoint, was the attempt to clarify that issue. We think that she did. Now, can you imagine a situation easily where it's the case that alcohol would have played on somebody's mind? Yes. I'm not denying that. I don't think that would be accurate or truthful. But when actually asked what was the basis, Emily Bell, the decision maker, said that was adequate in and of itself. As far as the 38 folks who were pointed out, and apart from the fact that it was not a Bro-Man decision, if you really look at the facts that are associated with those 38, there are none that factually match Mr. Reed's situation. Now, you know, how egregious was it? Well, he hit this car, or van, and it went down the street and across an intersection and into a pole. How much force did that take? Basically what you're doing is backing up and putting brush and garbage into a truck. What would that have taken? Well, that means that there was some pretty substantial force applied. Now, Mr. Heiple has suggested the idea that Mr. Clem, the supervisor for Manuel Reed, basically as far as he knew, the issue was alcohol. But what he actually says in his deposition is he was asked about whether or not it was the case that he participated in this decision as to whether or not to terminate it. His answer was no. And you can find that at pages 8, 9, 10, and 11 of his deposition. He says no, he was not. He was asked about the issue of alcohol. He was the gentleman who took Mr. Reed to Bro-Man Physician Management Corporation, so it made sense to be asking him questions about, well, did he look like he was intoxicated? Did he act like he was intoxicated? Those all made sense. But when it came down to the decision-making, he acknowledges that it's the case that he was not there and it was not his decision to make. So I really don't think that pointing to Mr. Clem as a basis for making a determination that alcohol was somehow involved in the decision-making process is really a valid one because he himself, by his own testimony, counts himself out. So if it was the case that alcohol was involved in the decision-making process, what has really happened here is Clem has not been able to demonstrate that. You can have as much speculation as you might want to have about that issue, but the letter is consistent with that. The arbitrator's decision is consistent with that. And then Emily Bell's deposition that was taken, and she was asked, is completely consistent with the idea that termination would have in and of itself been effective by virtue of the severity or egregiousness of the accident, which is a matter determined solely by the city of Bloomington. And if you have no other questions, I'll sit down. I don't see any other questions. Thank you. Okay. Thank you. Mr. Heifel for rebuttal. Thank you. Just briefly, I would point out first on the issue of causation that the claim is not contending that the city acted improperly because the city relied on the Roman test results in reaching its decision to terminate. And so if that's the case, then Roman would have been responsible if Roman provided inaccurate results to the city, which formed the basis for the city's termination of the plaintiff in the belief that he didn't have excessively high alcohol levels based on what was reported to the city. With respect to the letter by Emily Bell, it was only later in her deposition that she attempted to explain that the accident itself was egregious, but the letter does not use the word egregious or say anything about the accident being the nature of an egregious accident. In fact, it's much less egregious than many of the other vehicle accidents that other city employees were disciplined for. And then also she attempted in her deposition to distinguish between a primary and secondary reason for the discharge. When the letter doesn't speak to that, attempting to say that the accident was primary and alcohol was secondary, when really the combination of the two were the primary cause and then alcohol would have been secondary, but alcohol in either event would have played a role in the decision for termination. And now with respect to the, I think it's important on the issue of collateral estoppel, to distinguish between res judicata and claim preclusion as compared with collateral estoppel or issue preclusion, because with res judicata claim preclusion and any issue that might have been raised as part, but under collateral estoppel I think the case is construed the doctrine very narrowly so as not to prevent subsequent litigation of issues that weren't essential and that weren't clearly decided in the prior proceeding. So the issue has to have been specifically addressed and essential to the prior decision for collateral estoppel to apply. Here there isn't a duplication of issues. And I think the key pages of the arbitrator's decision are pages 12 through 14 in the discussion analysis section of the decision. It shows that these issues were not clearly presented or decided. In fact, no indication of negligence there. It's not clear that negligence affected the outcome of the testing, but it's the contention in the current case that negligence did affect the outcome of the testing. And I note on page 12 of the arbitration decision, it says the union noted a number of irregularities, such as a low battery, but that wasn't used, or the first machine didn't have the signature line on the printout, but the confirmation test did. So then the arbitrator says those things didn't matter, and then goes on to say that these discrepancies, while they may be disconcerting, don't address the accuracy of the machine's analysis of the breath alcohol, which is the critical question, and then goes on to explain that those machines are acceptable in addressing the union's argument that better machines were available. And so then the arbitrator concluded that because of the presence of the elevated alcohol level operating of equipment on a public street, that termination was justified based on those assumptions. So the negligent issues were never, I think, in narrowly construing collateral estoppel, those issues weren't essential to or even decided by arbitration, and so those issues shouldn't be harmed by collateral estoppel. Any other questions? I don't think so. Okay, thank you very much. Thank you. The case will be taken under advisement in a written decision.